[Civ. No..409. Third Appellate District.—January 3, 1908.]

## STATE COMMISSION IN LUNACY, Appellant, v. E. D. ELDRIDGE, Respondent.

STATE HOSPITAL—ACTION TO COMPEL SUPPORT OF INDIGENT INSANE SON—EVIDENCE — COMMITMENT — JURISDICTION — COLLATERAL ATTACK.—In an action by the state commission in lunacy to compel a father to support an adult indigent insane son committed to a state hospital for the insane, where the commitment showed that it was made upon an affidavit alleging his insanity, and after a medical examination, and that he was brought before the judge of the superior court having jurisdiction of his person for examination on a charge of insanity, and that upon testimony heard he was adjudged insane, and ordered confined in such state hospital, it was error to exclude such commitment from evidence, upon a collateral attack thereupon by the defendant, because it did not show affirmatively that he was served with a warrant of arrest, or with notice of the charge upon which he was to be examined.

ID.—PRESUMPTION UPON COLLATERAL ATTACK.—As against a collateral attack upon the commitment, it will be presumed, where the contrary does not appear upon the face of the proceedings, that the court having jurisdiction of the person adjudged insane, in the exercise of its statutory power, did all that the statute requires to give it jurisdiction to act.

ID.—LIABILITY OF RELATIVES TO SUPPORT INDIGENT INSANE—CONSTITUTIONAL LAW.—Section 2176 of the Political Code, requiring certain relatives, having the financial ability to do so, to support indigent insane kindred committed to a state hospital, is not unconstitutional, as being special or class legislation, or as an attempt to take private property for public use without compensation, or as imposing an unequal burden upon one class and discriminating in favor of another upon whom the burden is not cast, or as imposing double taxation. The liability for such support rests upon a legal as well as a natural duty.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. Frank H. Smith, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney General, and John W. Stetson, for Appellant.

The court erred in excluding the commitment from evidence. It was valid and could not be collaterally assailed. The presumption is in favor of the jurisdiction. (*Ex parte Clary,* 149 Cal. 732, 87 Pac. 580; *Koehler* v. *Holt Mfg. Co.,* 146 Cal. 335, 338, 80 Pac. 73.) Section 2176 of the Political Code, making the father liable for the care of an adult son confined in a state hospital, is constitutional and is not subject to the objection to the insanity law of 1897, passed upon in *Ex parte Lambert,* 134 Cal. 626, 86 Am. St. Rep. 296, 66 Pac. 851. This statute cannot be deemed unconstitutional as not requiring reasonable and constitutional procedure. (*Brown* v. *Urquhart,* 139 Fed. 849; Black's Interpretation of Law, p. 93.) Similar laws in other states have never been questioned as to their constitutionality. (*Edwards* v. *Davis,* 16 Johns. 281; *Ex parte Hunt,* 5 Cow. 284; *Stevens* v. *Cheney,* 36 Hun, 1; *De Puy* v. *Cook,* 90 Hun, 43, 35 N. Y. Supp. 632; *Walbridge* v. *Walbridge,* 46 Vt. 617; *Weathersfield* v. *Montague,* 3 Cowp. 507; *Jasper Co.* v. *Osborn,* 59 Iowa, 208, 13 N. W. 104; *Superintendent of Poor* v. *Rabbitt,* 99 Mich. 60, 57 N. W. 1084.) The law is not special legislation. It applies to all of a class. There is no valid constitutional objection thereto.

Buck & Middlecoff, for Respondent.

The right to maintain an action against the father for the support of his adult child is purely the creation of the statute. No such right exists at common law. (*Napa State Hospital* v. *Flaherty,* 134 Cal. 315, 66 Pac. 322; *City of Albany* v. *McNamara,* 117 N. Y. 168, 22 N. E. 931.) Plaintiff was not entitled to recover because not proving the allegation that the insane son was "duly committed" to the Stockton Insane Asylum. (*Portland* v. *Bangor,* 65 Me. 120, 20 Am. Rep. 681; *Michaels* v. *Central Ky. Asylum,* 118 Ky. 445, 81 S. W. 247.) There is no presumption that the statute was complied with, or in favor of the commitment. (*In Matter of Lambert,* 134 Cal. 630, 86 Am. St. Rep. 296, 66 Pac. 851; *Bedell* v. *Scott,* 126 Cal. 675, 59 Pac. 210.) In the case of *In re Clary,* 149 Cal. 732, 87 Pac. 580, 32 Cal. Dec. 236, emphasis is placed upon the fact that the commitment showed that the insane person was "duly committed." The word "duly," in legal parlance,

means "according to law." (*Brownell* v. *Greenwich*, 114 N. Y. 518, 22 N. E. 24, 4 L. R. A. 685.)   Section 2176 is unconstitutional. (*Baldwin* v. *County of Douglas*, 37 Neb. 283, 55 N. W. 875, 20 L. R. A. 850.)

HART, J.—This action was commenced by the plaintiff on the thirteenth day of November, 1905, for the recovery of the sum of $2,370, alleged to be due from the defendant, by virtue of the provisions of section 2176 of the Political Code, for the care, support and maintenance of the latter's adult son, who was, the complaint alleges, at the age of thirty-four years, duly committed, on the thirteenth day of September, 1892, to the State Insane Asylum at Stockton.   The trial resulted in a judgment for the defendant, and this appeal is from the order denying plaintiff a new trial.

There are only two questions presented and discussed by counsel.   The first is as to the ruling of the court, upon the objection of respondent, excluding as evidence the commitment upon which the patient, E. E. Eldridge, is held in custody by the superintendent of the State Hospital for the Insane at Stockton.   The second involves an attack upon the constitutional validity of section 2176 of the Political Code, imposing upon certain designated relatives the liability for the support and maintenance "of any insane person in a state hospital for the insane to which he has been or may hereafter be committed or transferred."

The answer, among other things, sets up the statute of limitations—section 338, subdivision 1, of the Code of Civil Procedure—in bar of plaintiff's action.   With reference to the special plea, counsel for the plaintiff admitted at the trial "that defendant's plea of the statute of limitations is good and valid for all but three years prior to the commencement of the action, and appellant waived judgment for any amount accruing prior to that time."

The medical superintendent of the Stockton State Hospital, Dr. Asa Clark, was called as a witness by plaintiff, and, after testifying that E. E. Eldridge had been an inmate of the hospital since 1892, "living there under the care of the institution and under my charge as medical superintendent during all of that time," he was shown the document purporting to be the commitment under the authority of which the patient was detained.   Dr. Clark identified the document and stated

that it constituted his authority for the custody of said Eldridge; whereupon counsel for plaintiff offered it in evidence and the offer was rejected by the court under objection by the defendant. Thus the first question was raised and is here presented.

The document which the court refused to admit in evidence consisted of an affidavit by one C. A. Eldridge, alleging the insanity of E. E. Eldridge, the medical examination of the doctors appointed by the court as the lunacy commission, and the order of commitment by the court. Said order, which follows the affidavit, reads as follows:

"E. E. Eldridge, the person named in the foregoing affidavit, being this day brought before me, Judge of the Superior Court, County of San Joaquin, for examination on a charge of insanity and having heard the testimony of C. A. Eldridge and Mrs. E. E. Eldridge, witnesses who have been acquainted with the accused during the time of the alleged insanity; and also the testimony of the examining physicians, and being myself satisfied after a personal examination that the said E. E. Eldridge is insane and is so far disordered in mind as to endanger health, person or property; and is not a case of idiocy, imbecility, dementia, or any class of incurable and harmless insanity, nor a case of delirium tremens; and being further satisfied of the truth of all the matters set forth in said physicians' certificate, I do hereby order him to be confined in the State Insane Asylum at Stockton.

"I do hereby charge the Sheriff of San Joaquin County with the execution of this order.

"And I certify that the sum of ........ dollars was found on the person of said patient at the time of h.... arrest, which said ........ is ordered to deliver to the Chief Medical Officer of said Asylum.

"Witness my hand, this 13th day of Sept. 1892.

                              "ANSEL SMITH,
                          "Judge of Superior Court."

The opposition to the introduction of said commitment and the proceedings leading thereto was upon the ground that the same failed to show that the patient had been "duly committed," or not committed according to the requirements of the statute. In support of this position it was insisted at the trial and here contended that it does not appear from the pro-

ceedings before the court resulting in the commitment of the patient that the alleged incompetent was served with a warrant of arrest or given the requisite notice of the charge upon which he was to be examined. Therefore, it is urged, the proffered evidence was properly excluded because it does not show that the patient had been "duly" committed—that is, committed in the manner required by the provisions of the lunacy law. To sustain their contention upon this point counsel for respondent cite the cases of *In re Lambert,* 134 Cal. 630, [86 Am. St. Rep. 296, 66 Pac. 851], *McGee* v. *Hayes,* 127 Cal. 336, [78 Am. St. Rep. 57, 59 Pac. 767] , and *Bedell* v. *Scott,* 126 Cal. 675, [59 Pac. 210].

We are of the opinion that the refusal of the court to allow the evidence, as offered by appellant, of the proceedings and of the order of commitment following therefrom upon which the alleged incompetent was and is held in custody as an insane inmate of the state hospital constituted error, and, if error, it is obviously highly prejudicial, because the excluded evidence was of the very essence and the foundation of plaintiff's cause of action. It may be conceded that the power of the superior courts to examine or try and commit insane persons to the hospitals for the insane, maintained by the state, is derivable alone from legislative enactments, and not from the constitution, and, while the jurisdiction over such cases is special, we are not prepared to accept the doctrine that it is so limited as to deprive proceedings had under the exercise of such power of the presumption of their regularity, particularly where they are not under direct attack. There is language in the case of *In re Lambert, supra,* apparently justifying the contention that there can be indulged no presumption in favor of the validity of the proceedings authorized for the purpose of an inquisition into a charge of insanity against a person, and that, consequently, every material fact requisite to give the court jurisdiction to hear and determine the issue in such case "shall be set forth in the document by virtue of which the person is to be deprived of his liberty or estate." But if the language referred to in that case may be subject to an interpretation agreeably to the contention of counsel for respondent, we think it is virtually overruled by a later expression of the supreme court to be found in the case of *Ex parte Clary,* 149 Cal. 732, [87 Pac. 580]. In that case,

discussing the requisites of a valid commitment under our insanity law, Associate Justice Shaw, speaking for the court, says: " . . . We do not mean to intimate, however, that, upon a collateral attack, the absence of the statement of a proper finding in the record would be fatal to the validity of the judgment in an insanity proceeding, where the court had jurisdiction of the person adjudged insane." Thus it will be observed it is at least intimated by the court that, where the attack upon the proceeding is not direct, it will be assumed, where it does not wholly so appear upon the face of such proceeding that the court, in the exercise of its statutory power, did all that the statute requires to give it jurisdiction to act.

The important distinction between the commitment in the case at bar and the one in the Clary case is that in the latter it is stated that the hearing was *duly had*, while in the former the italicized words are not employed. These words, it is said by respondent, or their equivalent in signification, should have been used in the commitment before us in order to fortify it against even collateral attack. The order of commitment shows that an affidavit, charging Eldridge with insanity, was filed, and that he was *brought before the judge* who committed him for examination on said charge of insanity. It also appears from the commitment that witnesses were examined in addition to the testimony given by the examining physicians as to the charge. Clearly enough it appears from the commitment that a hearing or trial was had in the *presence* of the accused, and we know of no principle of law from which we can find any warrant for holding, under a collateral attack, that, because it does not also appear that the accused was *arrested* in the manner pointed out by the statute, the entire proceeding was irregularly conducted and, therefore, void. In *Bible* v. *Wisecarver* (Tenn.), 50 S. W. 670, referring to an attack upon a proceeding resulting in the adjudication that a certain person was *non compos mentis,* it is said: "The main ground of objection is that he had no notice of the proceedings against him, and that no one was appointed therein to represent him. The record from the court recites that he did have notice; (italics ours), *and in this collateral attack on the proceedings we will indulge all proper presumption favorable to the regularity of the proceedings of the court,* it being a court of record, and having jurisdiction of the person and

subject matter.'' (See, also, *Moffitt* v. *Moffitt,* 69 Ill. 644; *Propst* v. *Meadows,* 13 Ill. 157; *Von Kettler* v. *Johnson,* 57 Ill. 109.) We think the commitment sufficient for the purposes of this case, and should have been received in evidence.

The objection suggested but not vigorously urged by counsel against section 2176 of the Political Code upon the ground that it is in violation of the constitutional inhibition against special and class legislation, is without merit. (*Estate of Yturburru,* 134 Cal. 567, [66 Pac. 729]; *Watt* v. *Smith,* 89 Cal. 602, [26 Pac. 1071].) The claim is that the requirement that certain persons, having the financial ability to do so, are liable for the support of one of their indigent kindred adjudged a *non compos mentis,* and confined in a state hospital, imposes upon a certain class of private individuals a burden not required to be borne by other persons; that it is ''an attempt to take private property for the public use without due or any compensation.'' If the law is obnoxious to the objection that it conflicts with the constitution it must be for the first and not the last stated reason, for certainly the payment of the expense or a part thereof, for the care and maintenance of one's relative, incapable of taking care of himself, could not be the taking of private property for a public use without compensation, since for the expenditure required a substantial equivalent is given by the agents of the state having management of the institution. And, as to the proposition of the alleged unequal burden imposed upon one class, thus, as contended, discriminating in favor of another upon whom the burden is not cast, the answer is, we think, that the so-called unequal burden is only one springing from a natural duty which, as to its performance, the legislature has recognized by positive enactment. (Civ. Code, secs. 38, 206.)

But we are met by the argument that, since the state has taken the responsibility of caring for and maintaining those unfortunates, and for that purpose imposes upon all property owners a tax for the support of the institutions established to attain that object, it amounts to a species of double taxation to require individuals who have relatives in said hospitals to pay for or contribute to their support. This position proceeds, we are inclined to think, from a misconception of the real, paramount purpose intended primarily by the legislature to be achieved by the establishment of state

institutions for the care and maintenance of the insane. Of course, one of the purposes is no doubt to protect the citizens against the violent acts of such insane people as may be dangerous, and who, if at large, would likely be a menace to the lives, persons and property of the citizens. But the principal purpose was and is to care for indigent insane, who in some cases may be successfully treated for the malady, or, if incurable, care for and maintain them as dependent persons, themselves without means or without relatives having means to properly care for them, being liable, if able, under the law so to do. In other words, the main object of the state in the maintenance of such institutions is much the same as that of counties in the maintenance of hospitals and poorhouses to care for and minister to the necessities of the indigent sick and others unable, through old age or other physical infirmities, to take care of themselves. If some one, having estate sufficient to defray the expense of his own care and support, or having no estate, but relatives legally liable for his care and maintenance, with ability to provide it, were to go to a county hospital or poorhouse for such care and maintenance, would it be a supportable proposition that, because he or his said relatives have borne their proportion of the general tax, such person could secure the benefit of such care and maintenance without paying something toward it? If such a proposition could be maintained, there would then be nothing to interfere with the filling of the county hospitals and almshouses with persons well able to pay for their own care, who would thus, without cost to themselves, be maintained at public expense—at the expense of many other taxpayers having no interest in such institutions further than approving by supporting them as a proper and necessary mode adopted by the government for taking care of those unable to take care of themselves. We can see no distinction in principle in this regard between such county institutions and state hospitals for the insane, and the argument which has been advanced that in the latter case the inmates are confined in the hospitals without their consent by the state does not answer the proposition. The liability for their support rests, as we have seen, upon a legal as well as natural duty, and their forcible detention inures as much to their benefit and to that of relatives obliged to contribute toward their

7 Cal. App.—20

care and support as to the state. As is said in the case of *Estate of Yturburru*, 134 Cal. 467, [66 Pac. 729]: "An insane person is liable for the reasonable value of things furnished to him, necessary for his support. (Citing Civ. Code, sec. 38.) This was so at common law, when the necessaries were furnished by an individual, and we have never seen a case, and do not think any can be found, holding that this rule comes in conflict with any provision of the constitution of this state or of any other state in the Union. We see no reason why the same rule should not apply to a state hospital for the insane, which does and furnishes for the insane person only those things required by the law of the state."

We find nothing in any of the cases cited by respondent, with the possible exception of *Baldwin* v. *County of Douglas*, 37 Neb. 283, [55 N. W. 875], in conflict with the conclusion we have here reached. There is certain language used in the case mentioned, not necessary to a decision of the point involved, and which is therefore mere *dictum*, indicating that the court doubted the power of the legislature to authorize the collection by the trustees of a state hospital for the insane of a sum of money from the estate of the incompetent or from a relative liable for his support for his care and maintenance. But the facts of that case are altogether different from those of the case at bar. The Nebraska statutes require each county to pay for the care of its own insane at the state hospital, and each of the counties from which insane are sent to the hospital is authorized to and does levy a special tax for that purpose. This is in addition to the general tax for the support of the state government and its institutions. It was, therefore, properly held that the law requiring persons to pay for the support of their insane relatives in the hospital authorized, under such circumstances, double taxation and was therefore contrary to the state constitution.

The other cases cited, notably *Napa State Hospital* v. *Flaherty*, 134 Cal. 315, [66 Pac. 322], and *Chicago* v. *O'Brien*, 111 Ill. 532, [53 Am. Rep. 640], do not support the contention of respondent. In the Flaherty case the constitutionality of the statute in question was not raised, nor was the proposition gone into. In discussing the main question in that case— as to whether the plaintiff was, under the statute, the proper party to bring the suit—the learned writer of the opinion in-

cidentally uses a sentence from which it might be inferred that he was doubtful whether the right to exercise the power vested in the superior courts by section 2176, *supra,* exists. But under the decided cases and upon principle we think the requirements of the section involve only a valid exercise of legislative power.

That the patient has been and is an inmate of the hospital and insane, and is and has been cared for and maintained by the authorities of the hospital, the evidence of the medical superintendent indisputably shows, and that the defendant, his father, should pay for his maintenance at the hospital, it appearing from the complaint that the incompetent has no estate or means of his own, and it likewise appearing that the defendant is of sufficient ability to do so, we have no doubt.

The order is reversed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 3, 1908, and the following dissenting opinion was then rendered by Beatty, C. J.:

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause for the reason that there is, in my opinion, a serious question as to the constitutionality of an act of the legislature which seeks to impose the obligation of support upon the father or mother of an adult son who, at the instance of the state, has been committed to an insane asylum because he is a dangerous lunatic. The question as to the validity of the enactment (Pol. Code, sec. 2176) is the more worthy of fuller consideration by reason of a question of construction affecting its operation if valid. It applies only in case the father, mother, etc., is of "sufficient ability." Who determines this question of ability and by what standard? Does it lie in the discretion of the state board to sue or not to sue according to their idea of what constitutes ability, or is it a question for the court in which the action is pending? Or is it to be determined by the return to a writ of execution? In other words, does the obligation of support continue until the father or mother, or wife or child, has been stripped of all his or her possessions except

property exempt from execution, or has the court or commission discretion to say how far the exaction shall be pressed? Upon the former supposition the operation of the law would in many instances result in grievous hardship, upon the latter its operation would be lax or oppressive according to the idiosyncracies of the officers, executive and judicial, charged with its enforcement. In short, considering the great number of cases in which the present decision will constitute a binding precedent, I think it should have received more thorough consideration than has yet been given it before allowing the judgment to become final.