[Crim. No. 333.   Third Appellate District.—December 21, 1915.]

## In the Matter of the Application of JEREMIAH C. O'CONNOR for a Writ of Habeas Corpus.

HABEAS CORPUS—QUESTION INVOLVED—JURISDICTION.—The sole ultimate question which is involved in a proceeding on *habeas corpus* is one merely of jurisdiction—that is, whether the order or the judgment or the adjudication or the process whose validity is thus attacked and questioned was one coming within the lawful authority or jurisdiction of the judge or the court or other legally constituted tribunal making, granting, or issuing it.

ID.—COMMITMENT OF INSANE PERSON—REGULARITY OF PROCEEDINGS—PRESUMPTION.—In a collateral attack by *habeas corpus* proceedings upon the validity of an order committing a person to a hospital for the insane, where the court has jurisdiction of the subject matter and of the petitioner, it must be assumed, in the absence of a contrary showing appearing upon the face of the judgment-roll, that the proceedings leading to the judgment or order of commitment were in all respects regular or had in accordance with the vital requirements of the statute authorizing the commitment.

ID.—COMMITMENT FOR INEBRIETY—TIME OF HEARING.—In a proceeding for the commitment to an insane hospital of a person charged with dipsomania or inebriety, it is not an abuse of discretion to set the time for the hearing and examination a few hours after the accused was brought before the judge, where it is shown that he was then informed as to all the rights guaranteed him under the statute.

ID. — PRODUCTION AND EXAMINATION OF WITNESSES — "REASONABLE OPPORTUNITY"—CONSTRUCTION OF SECTION 2185c POLITICAL CODE.— The "reasonable opportunity" to produce and examine witnesses

29 Cal. App.—15

which the statute contemplates shall be given a person charged and examined under section 2185c of the Political Code is a matter which must be determined by the circumstances of each particular case, and thus the matter is one whose determination rests in the sound discretion of the judge before whom the charge is pending and heard.

ID. — OMISSION TO PROVIDE FOR JURY TRIAL — CONSTITUTIONALITY OF SECTION 2185C, POLITICAL CODE.—One accused of inebriety is not entitled as of right to a jury trial, and section 2185c of the Political Code is not unconstitutional because it omits to provide for such a trial in cases arising under its provisions.

ID.—TRIAL BY JURY—CONSTITUTIONAL LAW.—The right of trial by jury secured by the constitution is the right to a jury trial as it existed and was recognized at common law.

APPLICATION originally made to the District Court of Appeal for the Third Appellate District for a Writ of Habeas Corpus.

The facts are stated in the opinion of the court.

Edward D. Wilbur, for Petitioner.

Edward D. Tyrrell, and W. F. Stafford, for Respondent.

HART, J.—The petitioner was, on the ninth day of June, 1915, by the Honorable John J. Van Nostrand, a judge of the superior court in and for the city and county of San Francisco, committed, under and by virtue of the provisions of section 2185c of the Political Code (Stats. 1911, p. 396), to the Napa State Hospital for the cure and treatment of the insane.

The petitioner insists that the order of commitment under which he is held at the state hospital is void, for reasons to be hereafter noticed, and that, therefore, his confinement in said institution involves an unlawful restraint of his personal liberty.

So much of section 2185c of the Political Code as is necessary to a clear understanding of the points made by the petitioner reads: "Whenever it appears by affidavit to the satisfaction of a magistrate of a county, or city and county, that any person is so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self-control, or is subject to dipsomania or inebriety, he must issue and deliver to some peace officer for service, a warrant directing that

such person be arrested and taken before a judge of the superior court for a hearing and examination on such charge. Such officer must, thereupon, arrest and detain such person until a hearing and examination can be had.  At the time of the arrest a copy of said affidavit and warrant of arrest must be personally delivered to said person.  Such affidavit and warrant of arrest must be substantially in the form provided by section 2168 of the Political Code for the arrest of a person charged with insanity.  He must be taken before a judge of the superior court, to whom said warrant and affidavit of arrest must be delivered to be filed with the clerk.  The judge must then inform him of the charge against him, and inform him of his rights to make a defense to such charge and produce any witnesses in relation thereto.  The judge must by order fix such time and place for the hearing and examination in open court as will give a reasonable opportunity for the production and examination of witnesses.  Such order must be entered in the minutes of the court by the clerk and a certified copy of the same served on such person.  The judge may also order that notice of the arrest of such person and the hearing of the charge be served on such relatives of said person known to be residing in the county, as the court may deem necessary or proper.  The hearing and examination shall be had in compliance with the provisions of sections 2169 and 2170 of the Political Code.''

Sections 2169 and 2170 of the Political Code read as follows:

''Section 2169.  The superior judge may, for any hearing, issue subpoenas and compel the attendance of witnesses and must compel the attendance of at least two medical examiners, who must hear the testimony of all witnesses, make a personal examination of the alleged insane person, and testify before the judge as to the result of such examination, and to any other pertinent facts within their knowledge.  The judge must also cause to be examined before him as a witness, any other person whom he has reason to believe has any knowledge of the mental condition of the alleged insane person or of his financial condition or that of the persons liable for his maintenance.  The alleged insane person must be present at the hearing, and if he has no attorney, the judge may appoint an attorney to represent him.

''Section 2170.  If the medical examiners, after making an examination and hearing the testimony, believe such person

to be dangerously insane, they must make a certificate, under their hand, showing as nearly as possible the facts as herein indicated, and in substantially the following form'': Then follows the form of the certificate of the medical examiners appointed to investigate the condition of the patient, which must, among other things, contain a general statement of the facts from which the medical examiners have reached the conclusion that the patient ''is so far addicted to the intemperate use of narcotics or stimulants as to have lost the power of self-control, or is subject to dipsomania or inebriety.''

The petitioner presents and urges several different and distinct grounds upon which he bases the claim that his commitment to the state hospital was beyond the authority of the judge to order. These are: 1. That a copy of the affidavit upon which the warrant for his arrest was issued and of said warrant of arrest were not personally delivered to him at the time of his arrest; 2. That the time fixed by the judge after the petitioner was brought before him for the hearing of the charge was not such as to afford to the petitioner ''a reasonable opportunity for the production and examination of the witnesses''; 3. That the petitioner was as a matter of right entitled to a trial by jury upon the charge preferred against him, and that, such right having been denied to him, his commitment to the state hospital was not the crystallization of a trial according to due process of law; that section 2185c, by reason of the absence therefrom of a provision giving to persons charged thereunder the right of trial by jury, is unconstitutional.

Obviously, the sole ultimate question which is involved in a proceeding on *habeas corpus* is one merely of jurisdiction—that is, whether the order or the judgment or the adjudication or the process whose validity is thus attacked and questioned was one coming within the lawful authority or jurisdiction of the judge or the court or other legally constituted tribunal making, granting, or issuing it. And, since it is clear that the judge making the adjudication assailed through this proceeding is by law invested with jurisdiction of the subject matter thereof, and that he acquired jurisdiction of the person of the petitioner, it must be assumed, in this collateral attack upon the adjudication, in the absence of a contrary showing appearing upon the face of the judgment-roll, if it may so be called, that the proceedings leading to the judg-

ment or order of commitment were in all respects regular or had in accordance with the vital requirements of the statute authorizing the commitment.    (*Ex parte Clary,* 149 Cal. 735, [87 Pac. 580] ; *State Commission in Lunacy* v. *Eldridge,* 7 Cal. App. 298, [94 Pac. 597, 600] ; *Ex parte Lewis,* 11 Cal. App. 530, [105 Pac. 774] ; *Gridley* v. *College of St. Francis,* 137 N. Y. 327, [33 N. E. 331].)    These observations apply particularly to the first two points, in the order above given, against the validity of the commitment.

The affidavit upon which the warrant of arrest was issued was made and filed by Jeremiah O'Connor, Jr., a son of the petitioner, on the eighth day of June, 1915, and on that day was, with a copy thereof and a copy of said affidavit, given into the hands of a police officer.

The certificate of the officer executing the warrant and which is a part of the record in the proceedings recites that said officer received said warrant on the eighth day of June, 1915, and served the same by arresting said Jeremiah O'Connor, alleged to be an inebriate, and brought him before Honorable John J. Van Nostrand, judge of the superior court of the state of California, in and for the city and county of San Francisco, *on the eighth day of June,* 1915, "and I further certify," continues the certificate, "that I delivered a copy of said warrant of arrest, together with a copy of the affidavit of intemperance, as directed in said warrant, personally to said Jeremiah O'Connor at the time of his arrest."

The order fixing the time for the hearing of the charge, as does the judgment or order of commitment, recites that the petitioner was brought before the judge on the ninth day of June, 1915, upon a warrant issued upon an affidavit sworn to by Jeremiah O'Connor, Jr., that he was then and there, in open court, informed of the charge alleged in said affidavit against him, and was further informed of his rights to make a defense to such charge, and to be represented by counsel, and produce witnesses in relation to such charge.    The order fixing the time for hearing also required that a copy of the same be served on the petitioner, the time for the hearing having been fixed for the hour of 11 A. M. of said ninth day of June, 1915, and one Roseberg certified that he served said order on the petitioner by delivering to him a copy of the same.

Thus it will be observed that there is absolutely no ground for the contention that a copy of the affidavit and the warrant

was not personally delivered to the petitioner at the time of his arrest, as the statute requires shall be done.

As to the point that the petitioner was not accorded ''a reasonable opportunity for the production and examination of witnesses,'' as the statute requires, we cannot say that the judge abused his discretion in that regard. As has been shown, the record discloses that the petitioner, upon being brought before the judge, was by the latter informed of all the rights guaranteed to a person charged under section 2185c with being an inebriate or dipsomaniac. He was explicitly told that he was entitled to subpoena witnesses and to examine them at the hearing in his own behalf.

What constitutes the ''reasonable opportunity'' to produce and examine witnesses which the statute contemplates shall be given a person charged and examined under section 2185c of the Political Code is a matter which must be determined by the circumstances of each particular case, and thus the matter is one whose determination rests in the sound discretion of the judge before whom the charge is pending and heard. This court so held in the case of *In re Lewis,* 11 Cal. App. 530, 532, [105 Pac. 774], where the petitioner, an insane patient, was examined under the provisions of sections 2168 et seq. of the Political Code, and wherein he raised the identical point under consideration, the section just named also providing that the patient must be given ''a reasonable opportunity for the production and examination of witnesses.'' We there, among other things, said: ''The determination of what is 'reasonable opportunity' is committed by the statute to the sound discretion of the court, to be exercised in view of the surrounding circumstances of each particular case, and where it does not appear on the face of the proceedings that such discretion has been abused, the judgment of the court, for the alleged reason that the person adjudged insane has not been given a reasonable opportunity to produce his witnesses and cause them to be examined touching his mental condition, cannot be disturbed.''

The statute does not provide that any particular space of time shall intervene between the time at which the order is made fixing a time for the hearing and the time so fixed, and the mere fact that in this case there could have intervened only a few hours between the time of making the order and the time specified therein for the hearing does not necessarily

justify the conclusion that the petitioner was not accorded a "reasonable opportunity" to produce and examine his witnesses. Whether the petitioner availed himself of this right by having witnesses produced and examined, is not made affirmatively to appear in the record. Indeed, the law nowhere requires that that fact shall be so made to appear. But it is to be assumed that, had the petitioner, having been informed of his rights in that regard, made a demand for the production of witnesses and presented the names of such witnesses, the judge, in obedience to the duty expressly enjoined upon him by the statute, would have given the petitioner ample opportunity to have produced such witnesses, and, if necessary for that purpose, have continued the hearing to some future time. It does not appear in the record that any such demand or request was made by the petitioner.

Upon this point we conclude that upon no view of the record can it be said that the petitioner was denied the "reasonable opportunity" for the production and examination of witnesses to which he was entitled under the statute.

3. The contention that the petitioner was entitled as of right to a trial by jury is untenable, and it follows, therefore, that section 2185c is not unconstitutional because it omits to provide for a trial by jury in cases arising under its provisions.

The right of trial by jury secured by the constitution is the right to a jury trial as it existed and was recognized at common law. (*Koppicus* v. *State Capitol Commrs.*, 16 Cal. 249; *Cassidy* v. *Sullivan*, 64 Cal. 266, [28 Pac. 234]; *Woods* v. *Varnum*, 85 Cal. 639, 644, [24 Pac. 843]; *People* v. *Powell*, 87 Cal. 348, [11 L. R. A. 75, 25 Pac. 481]; *Ex parte Wong You Ting*, 106 Cal. 296, [39 Pac. 627]; *In re Fife*, 110 Cal. 8, [42 Pac. 299.])

The Koppicus case involved the question whether an act of the legislature, providing for the construction of the state capitol in Sacramento and investing the state capitol commissioners with the power and authority of appraising the value of the property upon which the capitol building was to be erected, and making an award to the owner of the same, in accordance with such appraisement, was unconstitutional in that it denied to the owner the right to have the issue as to the value of his property passed upon and determined by a jury. The supreme court upheld the validity of the statute, saying, through Field, J.: "The provision of the constitution

that 'the right of trial by jury shall be secured to all and remain inviolate forever,' applies only to civil and criminal cases in which an issue of fact is joined. The language was used with reference to the right as it exists at common law. . . . It is in the common-law sense that the language has always been regarded by the courts of this state. It is a right 'secured to all' and 'inviolate forever,' in cases in which it is exercised in the administration of justice according to the course of the common law, as that law is understood in the several states of the Union. It is a right, therefore, which can only be claimed in actions at law, or criminal actions, where an issue of fact is made by the pleadings. It cannot be claimed in equity cases, unless such issue be specially framed for a jury under the direction of the court. It cannot be asserted upon an issue at law, for that is a matter purely for the court. The fact, therefore, that property and rights of property may be involved in the disposition of a particular case or proceeding does not determine the right to a trial by jury. There must be an action at law, as contradistinguished from a suit in equity, and *from a special proceeding,* or a criminal action, and an issue of fact joined therein upon the pleadings, before a jury trial can be claimed as a constitutional right.''

Under the common law, there was no inquisition precisely like that authorized by section 2185c of the Political Code. The nearest approach thereto were the proceedings under the writs of *de idiota inquirendo* and *de lunatico inquirendo,* which were analogous to the proceeding for like purpose under our law, whereby the question of the insanity or idiocy of one was investigated, with a view of committing him for treatment or safekeeping, if he were found to be either a lunatic or an idiot. While, in the earlier history of the common law, when the profits of the lands of one found to be an idiot or lunatic passed to the crown, the issue was tried by a jury of twelve men, yet, in later times, when mental diseases of a nature to impair the will came to be recognized as curable and appropriate subjects of governmental cognizance, proceedings looking to the determination of whether a person was of unsound mind to the extent of being unable to take care of himself and his property rights or of being dangerous to the safety of the public, were summarily conducted or prosecuted without the intervention of a jury, due provision being made

for the care and preservation of the patient's estate while he remained mentally incompetent and the return of the same and its profits to him, if he recovered from his malady, and for the proper disposition thereof should he die a *non compos mentis*.    (3 Blackstone, p. 428; 1 Blackstone, pp. 303–305.)

The theory upon which such inquisitions were conducted in a summary manner or without the aid of a jury was, doubtless, that the proceeding does not involve an inquiry as to whether a crime had been committed, nor was the commitment of the patient intended as a punishment, but that its purpose was for the sole benefit of the patient, by facilitating the proper treatment for his disease and at the same time protecting his estate from being lost or destroyed by that improvidence which necessarily accompanies a defect of will or understanding or by impositions practiced upon the incompetent by those ever ready to enrich themselves by any means, however unconscionable, that may become available to them.    And so it is true as to the proceeding under section 2185c of our Political Code.    Said proceeding does not involve the investigation of a criminal act, nor is the detention of the patient for the period prescribed by said section penal punishment or intended as such.    And, as was said by the supreme court of Iowa, in the case of *In re Breeze*, 82 Iowa, 573, [48 N. W. 991], where the main question was whether an alleged insane patient was entitled to have the question of her sanity tried by a jury: ''It is purely a special proceeding, and hence, technically, not a 'civil action,' which is defined to be a proceeding in which one party, known as the 'plaintiff,' demands against another party, known as the 'defendant,' the protection of a private right or the redress of a private wrong.'' (See sections 22 and 30 of our Code of Civil Procedure.)    The object of the statute is merely to authorize the state to take charge of and force treatment upon those so far addicted to the intemperate use of alcoholic liquors or narcotics as to have lost the power of self-control or to have become inebriates or dipsomaniacs.    The legislation represents in reality the exercise only of the police power, whereby the state may control or correct the individual habits of its citizens where such habits are or may become a menace to the peace, comfort, ''good-neighborhood,'' and health of the commonwealth.    The proceeding does not involve a trial but, in analogy to the common-law proceeding in insanity cases, is a mere inquisition,

by way of a *special proceeding,* the determination of which
should be left, as the law intends, largely to persons possess-
ing the learning of experts and not to laymen, of whom juries
are ordinarily composed, and who do not, nor are expected to,
possess the training and learning essential to a just and intelli-
gent solution of a scientific question such as is necessarily in-
volved in a proceeding whose purpose is to ascertain and de-
termine whether a person, from whatsoever cause, is suffering
from some serious mental infirmity.

But the position here taken is well buttressed by authority.

In *Ex parte Ah Peen,* 51 Cal. 280, the petitioner, a minor,
had been committed to an industrial school in accordance with
the provisions of an act of the legislature of 1858. He claimed
that his commitment was illegal because he had been denied
the right, guaranteed by the constitution, to a trial by jury,
and that, in denying him said right, the further provision
of the constitution that no person shall be deprived of his
liberty without due process of law, was violated. The court,
rejecting the contention, said: "It is obvious that these pro-
visions of the constitution have no application whatever to
the case of this minor child. The action of the police judge
here in question did not amount to a criminal prosecution,
nor to proceedings against the minor according to the course
of the common law, in which the right of trial by jury is guar-
anteed. The purpose in view is not punishment for offenses
done, but reformation and training of the child to habits of
industry, with a view to his future usefulness when he shall
have been reclaimed to society, or shall have attained his
majority. Having been abandoned by his parents, the state,
as *parens patriae,* has succeeded to his control, and stands *in
loco parentis* to him. The restraint imposed upon him by
public authority is in its nature and purpose the same which,
under other conditions, is habitually imposed by parents,
guardians of the person, and others exercising supervision and
control over the conduct of those who are, by reason of in-
fancy, *lunacy,* or otherwise, incapable of properly controlling
themselves," citing *Ex parte Crouse,* 4 Whart. (Pa.) 1, and
*Prescott* v. *State, etc.,* 19 Ohio, 184, [2 Am. Rep. 388].

In *In re Breeze,* 82 Iowa, 573, [48 N. W. 991], it is said:
"It is urged that appellant (an alleged insane patient) was
entitled to a jury trial in the district court, under the constitu-
tional guaranties that the right of trial by jury shall remain

inviolate; and in all criminal prosecutions, and in cases involving the life or liberty of an individual, the accused shall have a right to a speedy and public trial, by an impartial jury. These provisions are found in sections 9 and 10 of article I of the constitution of the state. In *Black Hawk County* v. *Springer,* 58 Iowa, 417, [10 N. W. 791], this court considered the rights of a person charged with insanity to a trial by jury under these provisions of the constitution, and held that they applied only to criminal prosecutions or accusations for offenses against the criminal law, where it is sought to punish the offender by fine or imprisonment.''

In *County of Black Hawk* v. *Springer,* 58 Iowa, 417, [10 N. W. 791], (the case referred to in the Breeze case), the Iowa court thus expressed itself: '' . . . The inquest of lunacy by a board of commissioners is in no sense a criminal proceeding. The restraint of an insane person is not designed as punishment for any act done. The insane are by the law taken into the care and custody of the state for treatment for their unfortunate infirmity. In our opinion, whatever may be thought of the power of the legislative department of the state to provide a special tribunal for the examination of persons alleged to be insane, the safeguards and limitations provided by our laws for the correction of any abuse which may arise from the acts of the commissioners are ample for the protection of the citizen.''

In *Crocker* v. *State,* 60 Wis. 553, 556, [19 N. W. 435], the supreme court of Wisconsin says that the common-law right of trial by jury, as guaranteed by the constitutions of that and other states, extends neither to proceedings to commit infants to an industrial school or a house of refuge nor to the determination of the mere insanity of a party, and in support of this proposition cites *Ex parte Crouse,* 4 Whart. (Pa.) 9; *Prescott* v. *State,* 19 Ohio St. 184, [2 Am. Rep. 388]; *Ex parte Ah Peen,* 51 Cal. 280; *Petition of Ferrier,* 103 Ill. 367, [43 Am. Rep. 10]; *Milwaukee Ind. School* v. *Milwaukee Co.,* 40 Wis. 328, [22 Am. Rep. 702]; *Gaston* v. *Babcock,* 6 Wis. 503; *Shroyer* v. *Richmond,* 16 Ohio St. 455; *Hagany* v. *Cohnen,* 29 Ohio St. 82.

But we need not further multiply cases upon the proposition in hand. They are numerous and, like the cases above examined, all to the effect that, where the state constitution guarantees the common-law right of trial by jury, only those

cases in which that right was habitually exercised according to the course of the common law come within the terms of the guaranty, and that an inquisition of insanity is not one of those cases.

The cases and authorities cited by the learned counsel for the petitioner have reference to cases where the legislature has provided that the question of insanity shall be tried by a jury. In none of them, except in the case of *De Hart* v. *Condit*, 51 N. J. Eq. 611, [40 Am. St. Rep. 545, 28 Atl. 603], is there any declaration approaching the statement that the right to a jury trial in such cases is the common-law right. And in the case mentioned it is merely stated, as we have already explained (quoting Blackstone), that under the *old* common law, proceedings under a writ of *de idiota inquirendo* or *de lunatico inquirendo* were had before a jury, and this for the obvious reason that with the adjudication of the person's idiocy or insanity passed the issues and profits of his estate, during the existence of his infirmity, to the crown. In such a proceeding, the property rights of the alleged incompetent were to some extent involved, and quite logically, in harmony with the recognized and zealously guarded polity of the British government, after its establishment upon the conquest of William the Conqueror, with respect to the rights of property and the right to a trial by jury where those property rights are affected or questioned, the natural and appropriate mode for determining whether the subject's property should be taken from him or, substantially, escheated to the crown, in such cases, was by a jury of disinterested persons of good common intelligence. As we have already shown, after provision was made for the safekeeping and preservation of the incompetent's estate and the issues and profits thereof, to be returned to him upon his restoration or devolved upon his heirs should he die without recovering from his malady, there was no longer allowed a trial of the question of the alleged incompetent's idiocy or insanity by a jury, but the whole question was committed for determination to a court or a committee, under the direction of the court, without the intervention of a jury. And this latter system prevailed long prior to the time when Sir William Blackstone gave to the civilized world his justly celebrated and splendid commentaries on the English common law.

The De Hart case involved the question whether a statute of New Jersey expressly requiring a jury of twelve men for the determination of the question whether a person was insane or afflicted with some other mental infirmity justifying his detention amounted to a denial to the alleged incompetent of the constitutional right to a trial by jury because it provided that the sheriff should summon twelve instead of twenty-four persons for that purpose. And, as before intimated, in all the cases where it is held that one charged with insanity is entitled to have the question tried by jury, such right is purely statutory or expressly conferred by legislative mandate. Very clearly, if the section of the code in question here, like our statute governing the investigation of cases of alleged insanity (Pol. Code, sec. 2174), authorized or required the question of inebriety to be tried by a jury, such requirement, whatever its terms or conditions, if reasonable, would have to be complied with; but the right thus allowed would not be the constitutional or common-law right of trial by jury. But the legislature has not so ordained as to the trial of questions arising under section 2185c of the Political Code, nor, for reasons already given, does said section violate any of the constitutional guaranties because there is omitted therefrom a provision according to a person charged under its provisions the right of trial by jury. Indeed, if, as the petitioner contends, he is entitled to a trial by jury as of right or by virtue of the constitutional guaranty with respect to trial by jury, it would be altogether unnecessary for the legislature to declare such right in the statute.

The result of the foregoing views is, obviously, that the writ must be discharged and the petitioner remanded, and it is so ordered.

Chipman, P. J., and Burnett, J., concurred.