[Crim. No. 559.   Third Appellate District.—April 15, 1921.]

## Ex Parte A. P. BRACKLIS on Habeas Corpus.

[1] CRIMINAL LAW—JURY—OBJECTION TO JUROR—TIME.—A defendant in a criminal action must depend upon his examination of the jurors on *voir dire* to acquaint himself with their qualifications, and cannot go ahead and take the chances of a favorable verdict and then raise the point after verdict that one of the jurors was disqualified because he was not in possession of his natural faculties by reason of the decrepitude of age.

[2] ID.—CONVICTION—DISQUALIFIED JUROR—REMEDY.—A defendant in a criminal action cannot after conviction raise the point by *habeas corpus* that one of the jurors was disqualified because he was not in possession of his natural faculties by reason of the decrepitude of age, but his remedy is to move the court on a proper showing to set aside the judgment.

APPLICATION for a Writ of Habeas Corpus to secure release after conviction of a felony.   Denied.

The facts are stated in the opinion of the court.

C. B. Harris and A. B. Reynolds for Petitioner.

U. S. Webb, Attorney-General, J. Chas. Jones, Deputy Attorney-General, Hugh B. Bradford, District Attorney, and Thomas A. Farrell, Assistant District Attorney, for Respondent.

PREWETT, P. J., *pro tem.*—The petitioner was charged with the commission of a felony.  He was convicted thereof by a jury of twelve men.

He sets out in his petition that one of these jurors was not a competent juror, in that he was not in possession of his natural faculties and was so decrepit that he was unable to comprehend the nature or character of the charge upon which the said A. P. Bracklis was being tried and was unable to comprehend the nature and effect of the testimony adduced during the trial.

1. Time for exercise of right of peremptory challenge, note, 19 Ann. Cas. 766.

He argues from this that the jury consisted of but eleven men and that he was therefore deprived of his constitutional right of trial by jury.

1. It may be conceded that a jury in a felony case must consist of twelve men and that a defendant on trial cannot waive his right to such a jury. The right secured by the constitution is the right as it was known at common law. (*People* v. *Powell*, 87 Cal. 349, [11 L. R. A. 75, 25 Pac. 481]; *Matter of O'Connor*, 29 Cal. App. 225, [155 Pac. 115].) At common law as well as under the constitutional provision, a jury in a felony case must consist of twelve.

[1] 2. It is a general doctrine in this state that a party on trial must depend upon his examination of the jurors on *voir dire* to acquaint himself with their qualifications and that he cannot go ahead and take the chances of a favorable verdict and then raise the point after verdict. This rule is so pronounced that he cannot even raise the point for the first time on motion for a new trial or on appeal. Still less can it be raised on *habeas corpus* where only jurisdictional matters may be inquired into.

"It appears by the affidavit on motion for a new trial that one Dahl, a juror who sat in the case, was not a citizen of the United States, and this fact is relied upon for a new trial. After a verdict is rendered, it is too late to raise for the first time, the question now presented. Counsel admit the soundness of this doctrine as a general proposition, but insist that the present case is an exception to the rule. The general doctrine is based upon the proposition that the objection comes too late, inasmuch as counsel should examine the juror as to his general qualifications in the first instance." (*People* v. *Evans*, 124 Cal. 206, [56 Pac. 1024].)

In another case the defendant, on motion for a new trial, offered to show that one of the jurors was a nonresident. The court overruled the point by saying: "The objection to the juror went to his competency, and had it been timely made, full opportunity for which was given defendant before the jury was sworn, should have been sustained. It was too late to raise the objection after trial." (*People* v. *McFarlane*, 138 Cal. 481, [61 L. R. A. 245, 71 Pac. 568, 72 Pac. 48].)

"An objection to a juror must be taken before he is sworn to try the cause." (*People* v. *Boren,* 139 Cal. 210, [72 Pac. 899].)

In *People* v. *Henderson,* 28 Cal. 465, one grand juror was not a citizen and another was not a taxpayer. The court said: "The defendant . . . examined such jurors as he saw fit as to their qualifications and exercised his right of challenge. No objection was made to either of these two jurors, nor did the defendant question them upon the points referred to. Conceding the point to be otherwise good, under these circumstances the objection came too late, when taken for the first time after indictment found. The objection should have been made by challenge at the time of the impaneling of the jury."

"The objection that one of the jurors was an alien could not be taken for the first time upon motion for a new trial. The defendants might have examined him upon the subject and exercised their right of challenge before he was sworn, but having failed to do this, they must suffer the consequences of their own neglect." (*People* v. *Chung Lit,* 17 Cal. 320.)

It would be as impracticable as it is unnecessary to attempt to quote from the large number of California cases approving the foregoing doctrine.

3. The petitioner, however, insists that the disqualification of this juror was one that went to his entire capacity to act at all—that, in effect, he was not a juror. The description of his infirmity as contained in the petition is not very full or satisfactory, but it may readily be deduced therefrom that the alleged infirmity was the decrepitude of age or illness. The petition contains no suggestion of insanity or any sudden physical or mental stroke that overwhelmed his faculties. The infirmities arising from old age are usually so apparent that a party could not be excused from observing them and questioning the juror concerning them. A case might be imagined where an adroit person cunningly insane might deceive the court and counsel, but if so, we have no evidence of such a condition in this case.

What may be the rule in a case where a juror becomes insane during the progress of the trial or where he successfully conceals his insanity from counsel until after the trial, it would be idle to inquire. In this case, there is no com-

plaint that the juror was insane. It is charged only that he was not in possession of his natural faculties by reason of decrepitude. While a defendant may not waive a constitutional jury of twelve persons, it seems that he can, by acquiescence or by silence, waive the qualifications of any juror. Especially is this so in a case where the infirmity arises from the decrepitude of the juror. The authorities are clear that a party cannot sit idly by and take the chances of a favorable verdict and then after verdict raise a point which he should have raised before the juror was sworn. The very purpose of the *voir dire* examination as to general qualifications is to ascertain whether or not the juror is a fit person to serve in that capacity at all. Having failed when he could and should have acted, the petitioner waived such limited disqualification as may have existed.

4. Petitioner has not shown that he was not aware of this alleged infirmity during the trial. We have shown by the foregoing authorities that it is quite necessary, in order to be heard on this point at all, that he should show that he was unaware of the objection to the juror in time to make seasonable objection to him.

[2] 5. But petitioner is not seeking the proper remedy. There was, at most, no such wide departure from the established forms of procedure as to render the whole judgment void. He had an ample remedy in the court below, of which remedy he should have availed himself. He should have moved the court on a proper showing to set aside the judgment. This method of procedure is sustained in the case of *People* v. *Perez,* 9 Cal. App. 265, [98 Pac. 870]. This proceeding is in the nature of a writ of error *coram nobis,* and while not such in form, it answers the same purpose. (*People* v. *Silver,* 154 Cal. 556, [98 Pac. 543].)

Unless this alleged error is so great that it renders the judgment utterly void, it cannot be reached by *habeas corpus,* for it is well settled that the writ of *habeas corpus* cannot be converted into a writ of error. "To grant this, however, would be to wrest the writ of *habeas corpus* from its primary purpose and to give it an operation that is not contemplated by the law. Its function is to determine the legality of one's detention by an inquiry into the question of jurisdiction and the validity of the process upon its face, and whether anything has transpired since it was issued to

render it invalid. It is not designed to retry issues of fact or to answer the purposes of an appeal." (*In re Leonardino,* 9 Cal. App. 690, [100 Pac. 708].)

The writ is dismissed and the petitioner remanded.

Burnett, J., and Hart, J., concurred.