## THE WESTERN UNION TELEGRAPH COMPANY V. FRANK MORRIS.

### No. 759.   (61 Pac. 972.)

1. EVIDENCE—*Contributory Negligence—Pleading.*   It is not error for the trial court to exclude evidence of contributory negligence where such defense is not pleaded.   Contributory negligence is an affirmative defense and must be pleaded to be available.

2. NEGLIGENCE—*Action by Husband—Measure of Damages.*   A husband may, in an action for damages resulting from injuries sustained by his wife by reason of the negligence and carelessness of another, in some cases, recover for the loss of his own time in attendance and nursing his wife; the value of the husband's time, however, while so engaged is determinable with reference to its value as a nurse; but he cannot recover, in addition, for the loss of his time, as such, its value in his ordinary occupation, nor for the reasonable value of his time which he may have lost from his business.

Error from Jackson district court; CHAS. F. JOHN-SON, judge. Opinion filed July 11, 1900. Reversed.

*George H. Fearons,* and *Rossington, Smith & Histed,* for plaintiff in error.

*S. B. Isenhart,* for defendant in error.

The opinion of the court was delivered by

McELROY, J. : This action was brought by Frank Morris against the Western Union Telegraph Company in the district court of Jackson county for the recovery of damages alleged to have been sustained through the negligence and carelessness of the defendant. Frank Morris, together with his wife, Daisy E. Morris, resided a short distance from Hoyt, in Jackson county. Mrs. Morris, on the 4th day of December, 1895, became sick; she desired the attendance of their family physician, Doctor Dawson, of North Topeka; and on the evening of that date, at 7 :30 o'clock P. M., she caused a message to be prepared and delivered to the agent of the telegraph company at its office in Hoyt, and paid the charges for its transmission, the message reading as follows :

"HOYT, KAN., December 4, 1895.
"*Doctor Dawson, North Topeka, Kan.* :
"Come on the morning train and not fail; answer. I will meet you.      FRANK MORRIS."

The message was delivered to Doctor Dawson in due time on the same evening, but when delivered it read :

"HOYT, KAN., December 4, 1895.
"*Doctor Dawson, North Topeka, Kan.* :
"Come on the morning train and not answer.
FRANK."

Hoyt is a station on the Rock Island railroad about twenty miles north of Topeka. There were two trains

daily leaving Topeka for Hoyt, at 6:30 A. M. and at 3:30 P. M.   If the telegram had been properly transmitted and delivered, Doctor Dawson could have taken the early morning train, and, if he had, would have arrived at the home of the defendant in error at about eight o'clock A. M. of December 5.   There was a man of the name of "Fronk" living near Hoyt, with whom Doctor Dawson was acquainted, and, presuming that the message was from this individual, he did not answer the call.   Had he known the message was from Frank Morris or his wife, he would have gone to Hoyt as requested.   If he had taken the morning train he could have reached his patient about eight o'clock A. M. of December 5; but by reason of the error in the transmission of the telegram he did not leave Topeka until he received a second message, and he did not reach the bedside of his patient until five o'clock P. M. of that date.   He found his patient suffering with inflammation of the peritoneum, called acute peritonitis.   The doctor remained with the patient on that day a few hours, and again visited her on December 7.   She had no further medical treatment, except that Doctor Dawson sent medicines to her from time to time until the 24th of December, when she was placed in charge of Doctor Plummer, of North Topeka.   On December 29 she underwent a surgical operation, which consisted in removing her ovaries and fallopian tubes.   The operation was performed by Doctor McClintock, assisted by Doctor Plummer.

It was the plaintiff's contention that the operation was the direct and proximate result of the negligence and carelessness of the telegraph company in not transmitting his message, so that medical attendance could have been earlier secured for his wife ; and that if the message had been properly transmitted the doc-

tor would have reached the patient in time to have removed the causes which ultimately resulted in the operation.

The telegraph company practically admits its negligence in the transmission of the telegram, but denies that the surgical operation or any portion of the prolonged sickness of Mrs. Morris resulted therefrom.

This action was for the loss of services and other pecuniary damages claimed to have been sustained by reason of the prolonged sickness and operation. A trial was had before the court and a jury, which resulted in a verdict and judgment for plaintiff in the sum of $1276. The defendant filed its motion for a new trial, which was overruled, and, as plaintiff in error, presents the record to this court for review and alleges error in the proceedings of the trial court—that the trial court erred in the admission of testimony, in the exclusion of evidence, in its instructions to the jury, and in overruling the motion for a new trial.

The first contention is based upon the admission of the following testimony of Doctor Dawson :

"Ques. I will ask you, if you had seen Mrs. Morris at the time that her disease became acute, if in your opinion you could have cured her and prevented the operation that afterward took place ? Ans. Yes, sir ; if I had seen her at that time, there would have been no trouble.

"Q. Now, I will ask you, if you had seen her at or very near after this inflammation became severe and acute, what would you or could you have done for her ? A. I could have stopped the pain immediately and relieved the inflammation.

"Q. Now, if you had been there to see this patient in time—that is, in the early inception of peritonitis, when it commenced—could you or would you have prevented these different stages which she went through with ; state whether in your opinion as a phy-

sician you would have worked a cure in her case? A. That would have saved her; she would not have had any pus formation.

"Q. So that would have saved this operation, in your judgment? A. Of course, the pus formation was the cause of the operation; preventing that local hyperæmia congestion, stasis, secretion, and inflammation, there would have been no formation of pus, and of course no operation."

The witness had been the family physician of the Morris family for about four years; he visited Mrs. Morris on December 5 and 7, 1895, made examinations, noted her symptoms, watched the development of her ailment, prescribed for her until the 24th day of that month, and knew the result of the affliction. When he arrived on the evening of December 5, the patient was suffering from acute peritonitis; her ailment was not of long standing—it had existed but a few hours.

In *A. T. & S. F. Rld. Co. v. Frazier*, 27 Kan. 465, the court says:

"It is insisted that the testimony of the physician, so far as it is expert testimony, must be based upon personal examination, or upon the facts as proved before the jury, or else upon an hypothetical statement. Doubtless this proposition is correct. It is true that within what is meant by the phrase 'personal examination' is properly included information derived from statements by the patient of *present* feelings and pain. In 1 Greenleaf, § 102, it is stated that 'the representations by a sick person of the nature, symptoms and effects of the malady under which he is laboring at the time are received as original evidence.'"

The court in this opinion recognizes three distinct methods of introducing expert testimony of a physician. It must be based either upon his personal examination, or upon the facts as proven before the

trial court, or upon a hypothetical question. In the case at bar the personal examination formed the basis upon which Doctor Dawson gave his testimony, and we think correctly. See, also, 8 Encycl. Pl. & Pr. 764, 765.

There are two specifications of error under the second assignment. In the argument of plaintiff in error, it is said :

"Doctor Dawson arrived late on the 5th of December ; contented himself with a few hours' visit ; saw the patient on the 7th ; for upwards of seventeen days the patient was allowed to remain without medical attendance, further than the sending of medicines by Doctor Dawson, upon receiving reports of her condition from her husband. This is exceedingly hazardous."

The defendant sought to show by the testimony of Doctor Roby and Doctor McClintock that the neglect of medical attention from December 7 to the 24th contributed much more to produce the condition of Mrs. Morris in the latter part of December than did the delay in the arrival of Doctor Dawson ; and that this neglect was the direct and proximate cause of the operation. This testimony was offered for the purpose of establishing contributory negligence, which was not pleaded. Contributory negligence is an affirmative defense, and must be pleaded. The testimony was properly rejected.

The only contention under the third assignment of error which we deem worthy of serious consideration is, that the court erred in instructing the jury upon the measure of damages. The court instructed the jury :

"If you find for the plaintiff, you may allow him for the expenses of said surgical operation, and also for any other or further expenses for medicine and

medical attendance which he had been caused in and about the treatment of his said wife; you may also allow him the reasonable value of the services of his said wife which he has lost from the time when said injury was caused until the present time; and if you find that the injuries to the plaintiff's said wife are permanent, then you may allow the plaintiff such other and further sum for the loss of her services which you are reasonably certain from the evidence he will sustain in the future. You may also allow the plaintiff for the loss of his own time while caring for his said wife, in such sum as the evidence shows you said plaintiff's time was reasonably worth.

"The plaintiff must establish by a preponderance of the evidence that he has suffered loss of his wife's services by reason of the injury received by the wife as alleged; and in determining what such services were for which the plaintiff can recover, you may take into consideration the household duties performed by the wife in caring for the children and keeping house, and the various household tasks incumbent upon the wife to perform, and ascertain what the services so lost are in their extent and value; how far the evidence shows she has been incapacitated by the injury from performing them; what the plaintiff has been reasonably compelled to pay out to have such duties performed by others. You may take into consideration any time reasonably devoted by the plaintiff himself in assisting in the performance of such duties and the reasonable value of the same, if any such were performed by him; you may also consider the time he lost from his business, if any, and may allow him the reasonable value thereof; you may take into consideration the character of the wife's injuries, whether temporary or permanent; and if you find such injury to be permanent, or of such a nature that the disability resulting therefrom is reasonably certain to continue, then you may allow the plaintiff for such further reasonable expenditure or sum as you find will be necessary in and about such ordinary and usual services performed by her as aforesaid; that is

to say, such other further reasonable expenses may be considered by you in arriving at a verdict herein as aforesaid; and after considering all the facts and circumstances in the case, you may give, if you find for the plaintiff, such a sum as in your sound judgment will be a fair and just compensation for the loss of the services of his wife in the past and such services as you find he will be reasonably certain to lose in the future as the result of said injury, which, of course, may be added to such sum or sums as the evidence may show that he has reasonably expended or incurred in doctors' bills and medicine and in the treatment of said injury, as hereinbefore explained, if you find that the same was caused by the negligence of the defendant as aforesaid.''

It will be observed that the court instructed the jury as to the measure of recovery as follows: ''You may also allow the plaintiff for the loss of his own time while caring for his said wife, in such a sum as the evidence shows you said plaintiff's time was reasonably worth.'' And further, ''You may also consider the time he (plaintiff) lost from his business, if any, and may allow him the reasonable value thereof.''

These instructions cover an element of damages not recoverable in the action. The court had already instructed the jury that plaintiff might recover for any time reasonably devoted by himself to assisting in the performance of such duties as devolved upon the wife to perform and the reasonable value of the same.

The husband may, in an action for damages resulting from injuries sustained by his wife by reason of the negligence and carelessness of another, in some cases recover for the loss of his own time in attendance and nursing of his wife; the value of the husband's time, however, while so engaged, is determinable with reference to its value as a nurse; but he cannot recover, in addition, for the loss of his time, as such, its

value in his ordinary occupation, nor for the reasonable value of his time which he may have lost from his business.

The instructions in this respect were erroneous; they authorized a recovery for the loss of time from plaintiff's business, which, as such, was not properly an element of damages. (*Hazard Powder Co. v. Volger*, 58 Fed. 153, 7 C. C. A. 130; *Town of Salida v. McKinna*, 16 Colo. 523, 27 Pac. 810; 8 A. & E. Encycl. of L., 2d ed., 649.)

The court erred in overruling the motion for a new trial.

The judgment is reversed and the cause remanded for a new trial.