[L. A. No. 21677. In Bank. May 8, 1951.]

In re ELIZABETH SPRAGUE.

Elizabeth Sprague, in pro. per., for Appellant.

Jerome B. Kavanaugh, District Attorney, and Theo. G. Krumm, Chief Deputy District Attorney, for Respondent.

SHENK, J.—This is an appeal from an order denying the petitioner's application for the writ of error *coram nobis*.

On July 22, 1941, a petition was filed in the Superior Court in and for the County of San Bernardino alleging that the petitioner herein was mentally ill and in need of supervision, care and treatment. Upon her demand the matter was tried before a jury which on August 1st returned a verdict that she was insane. She was committed to the state hospital at Patton. She was represented at the trial by counsel appointed by the court. There was no motion for a new trial and no appeal was taken from the judgment entered on the jury's verdict. On April 1, 1943, the petitioner was released on parole and on May 27, 1943, she was discharged as recovered.

The petitioner's declared concern since her discharge has been to have the asserted erroneous verdict and judgment expunged from the record in order to clear her name for the sake of herself and her children and because of its alleged adverse effect on her earning power.

The application for the writ was filed in October 1947. In explanation of the delay in making the application the petitioner shows the following: She was unable to obtain counsel or prepare the petition during her period of treatment in the hospital. After her discharge she sought and obtained employment in accountancy and office management, in which she had had years of training and experience, in order to support herself and her two daughters. From September 1943 to March 1944 she was concerned with securing a divorce from her husband in the Florida courts where they had lived for some time and had had a daughter born to them in 1939.

Other delays were caused by her financial inability to employ counsel and by the necessity for study in the personal preparation of her application and the supporting documentary material.

■ Delay in seeking the writ of error *coram nobis* has been held to be sufficient ground for denial. (See *People* v. *Lumbley,* 8 Cal.2d 752 [68 P.2d 354] ; *People* v. *Vernon,* 9 Cal. App.2d 138 [49 P.2d 326] ; *People* v. *Harincar,* 49 Cal.App. 2d 594 [121 P.2d 751].) But in view of the fact that the trial court entertained the application on the merits, this court will consider the merits on the appeal.

The petitioner was represented by an attorney on the filing of the original petition herein. A demurrer was sustained with leave to amend, and the petitioner personally prepared and filed an amendment and a supplement to the amendment. A trial on the issues tendered by the pleadings was had on October 25, 1948, at which the petitioner was represented by counsel. After judgment she prosecuted her appeal in propria persona, preparing and filing two briefs and a petition for hearing in this court, and presented her oral argument in person.

A hearing in this court after decision of the District Court of Appeal, Fourth Appellate District, was granted for the reason that Justice Stanley Mussell, who as a judge of the superior court sustained the demurrer to the original petition in this proceeding, participated in the decision on the appeal to the District Court of Appeal. (See *Knouse* v. *Nimocks,* 8 Cal.2d 482 [66 P.2d 438].) This court, in resolving the contentions on the appeal, has given full consideration to the entire record.

The application for the writ was based on the petitioner's claim that the court proceeding on August 1, 1941, did not constitute a trial on the merits of her mental condition but that the purported trial proceeded on assumed facts and conditions which did not exist and that facts existed which, without any fault or negligence on her part, were not presented to the court at the trial and which if presented would have resulted in a verdict in her favor. (See *People* v. *Gilbert,* 25 Cal.2d 422, 442 [154 P.2d 657] ; *People* v. *Mendez,* 28 Cal.2d 686, 688 [171 P.2d 425] ; *People* v. *Tuthill,* 32 Cal. 2d 819, 821 [198 P.2d 505] ; *People* v. *Adamson,* 34 Cal.2d 320, 326-327 [210 P.2d 13].) It is therefore contended that the order denying the writ is erroneous because the oral and

documentary evidence supports the grounds for issuance of the writ as matter of law.

The petitioner's 16-year-old daughter, born of her first marriage, was not produced as a witness at the trial in 1941. It is claimed that, although the petitioner did not know her then whereabouts, she could have been located through an uncle and that, if she had been produced in accordance with the petitioner's request, her testimony would have proved the facts which are now presented. The record also includes the results of subsequent examinations and treatments of the petitioner's condition which it is claimed bear on the facts.

The record contains voluminous documentary data which is explanatory of the background leading to the events involved in the 1941 proceeding. It is offered as revealing the actual as distinguished from the alleged assumed facts and conditions in 1941. It is unnecessary to include here a recital of all the factual data. It is sufficient to say that the apparent ground of the verdict in 1941 was that the petitioner was suffering from hallucinations and delusions of a persecutory nature and required hospital treatment. It appears that the petitioner's story told at that time was considered by the examining doctors as delusionary, as fantastic because nonexistent in fact. No investigation was then made of the truth of her story nor was there an examination of the petitioner's physical condition, and the reason for her sensations of suffocation causing collapse into unconsciousness was not discovered.

The present record discloses the marital history of the Spragues and the basis in fact for the petitioner's seeking seclusion together with her older daughter at the time of the events in July 1941. After her discharge from the hospital in 1943 the petitioner underwent physical examinations, received diagnoses of adrenal cortical insufficiency and paroxysmal tachycardia, and benefited from treatment for those disorders. On two occasions subsequent to her discharge, when she felt she needed treatment and could not afford private medication, she applied voluntarily for admission to the state hospital and remained there for a short period on each occasion. In August 1948 she procured a jury trial on the issue of her mental condition. At that trial the older daughter testified and substantiated the facts now presented. The jury rendered a verdict that the petitioner was "sane at the present time."

The older daughter also testified on the trial in the present proceeding and disclosed the reasons for not attending the hearing in 1941. It is now clear that the petitioner's story which in 1941 was assumed to be delusionary had factual support; that the petitioner's basic disturbance, determined about July, 1944, was and is a heart condition which does not require confinement in an institution for successful treatment, and that mental depression resulting from the disorder is also corrected by treatment of the physical condition which responds favorably to administration of adrenal cortical substance and desoxycorticosterone. In the record are doctors' certificates dated in 1947 to the effect that had they known the facts shown by the documentary evidence they would have considered as logical, consecutive, plausible, and not delusionary, the story which was the basis of their testimony in 1941; and that the cause of the petitioner's disturbance was the heart condition. The record shows that while receiving treatment at the state hospital the petitioner required very little or no supervision; that she was a cooperative patient; that she was never considered to have been harmful to herself, to other persons, or to property; that she was not placed under any restraint but voluntarily undertook the performance of duties; that in the hospital, where she was called "Sunshine" by the other patients, she admittedly found rest and peace, and that her condition would continue to improve with treatment. The petitioner's employment history shows her to be a person of unusual competence in her chosen field of accountancy, and that she never lost a position because of the 1941 proceeding except on two occasions when she voluntarily reported to her employer the facts of her previous treatment and her concern about correcting the record.

Section 5040 of the Welfare and Institutions Code defines "mentally ill persons" as persons who are of such mental condition that without supervision, treatment, care or restraint they would be or might be dangerous to themselves or to the persons or property of others. Section 5041 states that "insane persons" means mentally ill persons who have been adjudicated by a court to be so psychotic as to be dangerous to themselves or to the person or property of others and are found to be in need of supervision, treatment, care and restraint.

It may be assumed that if the presently known facts had

been introduced in evidence at the 1941 hearing they would have shown that the petitioner was not a person to be included within either of those definitions. But that is a far different consideration from that which controls the question whether the relief asked may be granted in the present proceeding. On the hearing in this court the petitioner graciously accepted the oral suggestion from the Bench that possibly she had mistaken her remedy.

The briefs of the petitioner and her presentation on the hearing show that she is familiar with the history and the office of the writ of error *coram nobis* as declared in previous decisions, and there is no necessity to reiterate them here. (See *People* v. *Mooney,* 178 Cal. 525 [174 P. 325] ; *People* v. *Reid,* 195 Cal. 249, 254 et seq. [232 P. 457, 36 A.L.R. 1435] and cases cited; *People* v. *Schwarz,* 201 Cal. 309, 314-315 [257 P. 71] ; *People* v. *Egan,* 73 Cal.App.2d 894, 899 [167 P.2d 766].)  ██  As disclosed in those and other cases the truth or falsity of the testimony before the court is not a matter which can be relitigated through the office of this writ, at least in the absence of a deprivation of the legal rights of the petitioner through extrinsic causes.  ██  Mere mistake or negligence of herself or her attorney in the procurement of evidence or witnesses on the 1941 trial is not such a cause. The record shows and the petitioner admits that neither the court nor the district attorney had anything at all to do with the nonattendance of the daughter at the former hearing. Neither does an extrinsic cause appear because the medical diagnosis concerning the petitioner's real condition was not then obtained.

██  The petitioner's proper remedies were by motion for new trial or by appeal from the judgment entered in 1941. As the foregoing cited cases also determine, the fact that the proper remedies were not pursued does not give to the petitioner any greater right in this proceeding than she otherwise might have. Because of this condition of the record the law cannot afford the petitioner the relief which she seeks.

By her own persistent efforts the petitioner has accomplished much in her objective to dispel an erroneous conception of the nature of her ailment. In her own words she has fought a good fight and kept faith with her children. The record of this proceeding has placed in permanent form the evidence of her steadfast purpose since her discharge in 1943 to avoid the results of a proceeding claimed by her to have been taken

against her unjustly. But in accordance with the applicable rules of law the order may not be disturbed.

The order is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied June 7, 1951.